# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PENNY MAXFIELD,                  )

                           )

            Plaintiff,       )

                           )    **CIVIL ACTION**

v.                          )

                           )    **No. 12-1130-JWL**

CAROLYN W. COLVIN,[1]      )

Acting Commissioner of Social Security,     )

                           )

           Defendant.     )

_____ )


## MEMORANDUM AND ORDER


Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security disability(SSD) benefits under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Commissioner's final decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.    Background

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSD benefits on August 4, 2008, alleging disability beginning June 20, 2008. (R. 9, 146-56). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 9, 50-51, 81-82). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Michael D. Schilling on September 7, 2010. (R. 9, 21-23). At the hearing, testimony was taken from Plaintiff and from a vocational expert. (R. 9, 21-49). On September 24, 2010, ALJ Schilling issued his decision finding that although Plaintiff has severe impairments which preclude the performance of her past relevant work, when considering her age, education, and work experience along with her residual functional capacity (RFC), there are jobs that exist in significant numbers in the national economy that the claimant can perform. (R. 9-19). Therefore, he determined that Plaintiff is not disabled within the meaning of the Act, and denied her application for benefits. (R. 19-20). Plaintiff requested Appeals Council review of the ALJ's decision and submitted a Representative Brief explaining why in her view the ALJ's decision is not supported by substantial record evidence. (R. 140-45). The Council made the Representative Brief a part of the administrative record and considered it, but decided that the Brief did not provide a basis to change the ALJ's decision, and denied Plaintiff's request for review. (R. 1-5). Therefore, the ALJ's decision became the final decision of the Commissioner; (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006); and Plaintiff now seeks judicial review. (Doc. 1).

## II.     Legal Standard

The court's jurisdiction and review are guided by the Act.  <u>Weinberger v. Salfi</u>,

422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); <u>Wall v. Astrue</u>, 561 F.3d 1048,

1052 (10th Cir. 2009) (same); <u>Brandtner v. Dep't of Health and Human Servs.</u>, 150 F.3d

1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C.

§ 405(g)).  Section 405(g) of the Act provides for review of a final decision of the

Commissioner made after a hearing in which the plaintiff was a party.  It also provides

that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by

substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine

whether the ALJ's factual findings are supported by substantial evidence in the record

and whether she applied the correct legal standard.  <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084

(10th Cir. 2007); <u>accord</u>, <u>White v. Barnhart</u>, 287 F.3d 903, 905 (10th Cir. 2001).

Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such

evidence as a reasonable mind might accept to support a conclusion.  <u>Richardson v.

Perales</u>, 402 U.S. 389, 401 (1971); <u>Wall</u>, 561 F.3d at 1052; <u>Gossett v. Bowen</u>, 862 F.2d

802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute

[its] judgment for that of the agency."  <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir.

2008) (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir.

1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005).

When deciding if substantial evidence supports the ALJ's decision, the mere fact

that there is evidence in the record which might support a contrary finding will not

establish error in the ALJ's determination.  "The possibility of drawing two inconsistent

3

conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and noting that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."). Moreover, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is disabled only if she can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084. The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot,

considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. § 404.1520 (2010);[2] Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the

---

[2]Because the Commissioner's decision was issued on September 24, 2010, all citations to the Code of Federal Regulations in this opinion refer to the 2010 edition of 20 C.F.R. Parts 400 to 499, revised as of April 1, 2010, unless otherwise indicated.

economy.  <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  <u>Blea</u>, 466 F.3d 903, 907 (10th Cir. 2006); <u>accord</u>, <u>Dikeman v. Halter</u>, 245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  <u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in weighing the medical opinions and in evaluating the credibility of her allegations of symptoms resulting from her physical and mental impairments.  The Commissioner argues that the ALJ properly evaluated the credibility of Plaintiff's allegation of symptoms and properly weighed the medical opinions contained in the record.  The court finds no error in the decision below, and addresses the issues in the order they were raised in Plaintiff's Brief.

## III.    Evaluation of Medical Opinions

Plaintiff claims the ALJ erred by discounting the medical opinion of her treating physician, Dr. Laccheo, and by according greater weight to the medical opinion of the nonexamining physician who reviewed the record for the agency, Dr. Siemsen.  (Pl. Br. 12-13).  She argues that the ALJ failed to give "specific, legitimate reasons" for discounting Dr. Laccheo's opinion, failed to evaluate the opinion in accordance with the regulatory factors for evaluating medical opinions, "failed to discuss any of the regulatory factors, and failed to explain the relative weight accorded each factor" in his analysis. (Pl. Br. 14) (citing <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1082 (10th Cir. 2004)).

Plaintiff's brief implies that the ALJ failed to sufficiently explain his reasons for discounting the medical opinions of Plaintiff's treating psychiatrist, Dr. Mohiuddin, of the non-treating psychological consultant, Dr. Frieman, and of the "state agency RFC." Id. 15. She points to certain evidence from the administrative record regarding treatment or examination by Dr. Laccheo, Dr. Polly, and Dr. Veloor, and to the reports of Dr. Siemsen, and argues that the record evidence better supports Dr. Laccheo's opinion and that the ALJ failed to recognize that Dr. Siemsen did not support his opinion and consequently the ALJ failed to demonstrate specifically how the evidence supports Dr. Siemsen's opinion. Id. at 16-18. She concludes by arguing that, "[b]y failing to properly evaluate all of the above opinions to show whether their respective opinions were and were not supported by the substantial evidence of record the ALJ failed to provide the court with a clear analysis to understand what the ALJ based his decision upon**.**" Id. at 17-18.

### A.      The ALJ's Evaluation of the Medical Opinion Evidence

In the decision, the ALJ summarized and accorded weight to the reports, treatment records, and medical opinions of Dr. Siemsen; Dr. Duncan, a physician who examined Plaintiff and provided a report of that examination; Dr. Curtis, a physician who examined Plaintiff and provided a report of that examination in connection with a worker's compensation claim not at issue here; Dr. Laccheo, Plaintiff's treating physician; Dr. Stern, a non-examining consultant psychologist who completed a case evaluation, a Psychiatric Review Technique form, and a Mental Residual Functional Capacity Assessment form for the state agency; Dr. Wilkinson, a psychologist who examined

Plaintiff for the state agency and prepared a report of that examination; Dr. Mohiuddin, Plaintiff's treating psychiatrist; and Dr. Frieman, a psychologist who examined Plaintiff and prepared a report of that examination in connection with the worker's compensation claim. (R. 15-17). The ALJ noted that Plaintiff "underwent surgical release for carpal tunnel on November 20, 2008 by John B. Moore, M.D.," that she was released to return to full duty with no restrictions in January, 2009, and that she was a no–show for her final follow-up appointment in March 2009. (R. 14). He also noted that a Physical RFC Assessment form had been completed for the state agency by a single decisionmaker (SDM) who is not a medical source, he found that the opinion contained therein is not consistence with the record medical evidence, and he accorded it no weight. (R. 17-18).

The ALJ stated that "[b]ased on her limitations related to her carpal tunnel and pain in her wrists and hands, the undersigned finds the claimant should be limited to jobs that do not require constant rapid motion with the left hand and she should avoid prolonged exposure to extreme cold temperatures and vibrations." (R. 15). The ALJ accorded "significant weight" to the opinions of Dr. Siemsen, Dr. Duncan, and Dr. Stern. (R. 15, 17). He accorded "little weight" to Dr. Laccheo's opinion; stated he did not give "great weight" to the opinions of Dr. Curtis and Dr. Frieman; and accorded "some weight" to the opinions of Dr. Wilkinson, and Dr. Mohiuddin. (R. 16-17).

### B.    Legal Standard to Evaluate Medical Opinions

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a

claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis."

20 C.F.R. § 404.1527(a)(2).  Such opinions may not be ignored and, unless a treating

source opinion is given controlling weight, <u>all</u> medical opinions will be evaluated by the

Commissioner in accordance with factors contained in the regulations.  <u>Id.</u> § 404.1527(d);

SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2012).  A physician

who has treated a patient frequently over an extended period of time (a treating source)[3] is

expected to have greater insight into the patient's medical condition, and his opinion is

generally entitled to "particular weight."  <u>Doyal v. Barnhart</u>, 331 F.3d 758, 762 (10th Cir.

2003).  But, "the opinion of an examining physician [(a nontreating source)] who only

saw the claimant once is not entitled to the sort of deferential treatment accorded to a

treating physician's opinion."  <u>Id.</u> at 763 (citing <u>Reid v. Chater</u>, 71 F.3d 372, 374 (10th

Cir. 1995)).  However, opinions of nontreating sources are generally given more weight

than the opinions of nonexamining sources who have merely reviewed the medical

record.  <u>Robinson</u>, 366 F.3d at 1084; <u>Talbot v. Heckler</u>, 814 F.2d 1456, 1463 (10th Cir.

1987) (citing <u>Broadbent v. Harris</u>, 698 F.2d 407, 412 (10th Cir. 1983), <u>Whitney v.

---

[3]The regulations define three types of "acceptable medical sources:"

"Treating source:"  an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.
"Nontreating source:"  an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  <u>Id.</u>
"Nonexamining source:"  an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  <u>Id.</u>

Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2012) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of

examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 404.1527(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### C.     Analysis

Contrary to Plaintiff's claims, the ALJ did not reject the opinion of Dr. Laccheo, but accorded "little weight" to it in formulating his assessment of Plaintiff's RFC. (R. 16). Moreover, he provided specific, legitimate reasons for discounting Dr. Laccheo's opinion. Id. He specifically noted that he would not give controlling weight to the opinion, and stated that he discounted the opinion because (1) it is not consistent with the record medical evidence or (2) with Dr. Laccheo's treatment notes, and (3) because although Dr. Laccheo is a family practitioner, he is not an orthopedic or psychiatric specialist. Id. These are three specific, and legitimate, reasons to discount the opinion.

11

Plaintiff asserts that the ALJ "maligned" Dr. Laccheo by stating he was a family practitioner and not a specialist, but she does not show how this is improper or unfair in any way. (Pl. Br. 13). As discussed above, whether or not the physician is a specialist in the area upon which an opinion is rendered is one of the regulatory factors to be used in weighing a medical opinion.

Plaintiff argues that the ALJ failed to discuss any of the regulatory factors in weighing Dr. Laccheo's opinion and "failed to explain the relative weight accorded to each factor." Id. at 14. Plaintiff's argument misunderstands the law with regard to considering the regulatory factors. The court will not insist on a factor-by-factor analysis of the medical opinions so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300). That standard is met here.

Here, the ALJ stated both that he had carefully considered the entire record in making his RFC assessment and that he had considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527. (R. 13-14). Plaintiff testified at the hearing that Dr. Laccheo had been her primary physician since she was 15 years old. (R. 37). The ALJ specifically stated that Dr. Laccheo was Plaintiff's treating physician, and the reasons he gave for discounting Dr. Laccheo's opinion indicate that the ALJ also considered the degree to which the physician's opinion is supported by relevant evidence, the consistency between the opinion and the record as a whole and whether or

not the physician is a specialist.  There can be no doubt that the ALJ considered the regulatory factors in weighing Dr. Laccheo's medical opinion.  He is not required to "explain the relative weight accorded to each factor" as suggested by Plaintiff.  (Pl. Br. 14).  As required, the decision makes clear what weight the ALJ gave Dr. Laccheo's opinion and the reasons for that weight.  More is not required.

Plaintiff's argument that the ALJ failed to sufficiently explain the weight given Dr. Mohiuddin's opinion and Dr. Frieman's opinion is even more conclusory and less well-developed than is her argument regarding the evaluation of Dr. Laccheo's opinion. Nonetheless, the court determines that the ALJ adequately explained his evaluation.  He acknowledged that Dr. Mohiuddin is a treating physician, but discounted that opinion because it appears that Plaintiff's mental impairments are controlled by the medication prescribed by Dr. Mohiuddin, because the opinion is inconsistent with the record as a whole, and because the opinion is also inconsistent with Dr. Mohiuddin's treatment notes. (R. 17).  The ALJ stated that he did not give "great weight" to Dr. Frieman's opinion because it was "completed prior to the claimant's carpal tunnel surgery, which resulted in a good outcome, and because Dr. Frieman's report was "purchased in connection with the claimant's worker's compensation claim," not in connection with the Social Security proceedings.  Id.  While the ALJ did not go to great lengths explaining the weight accorded to Dr. Mohiuddin's or Dr. Frieman's opinion, the record does not demonstrate a need to go into greater detail.

Dr. Stern, Dr. Wilkinson, Dr. Mohiuddin, and Dr. Frieman each provided medical opinions relating to Plaintiff's mental impairments and limitations. The ALJ accorded "significant weight" to Dr. Stern's opinion, "some weight" to Dr. Wilkinson's and Dr. Mohiuddin's opinions, and "not . . . great weight" to Dr. Frieman's opinion, but nonetheless determined significant mental limitations in Plaintiff's ability. He determined Plaintiff is limited to jobs with only simple or intermediate instructions or tasks and only occasional interaction and cooperation with the general public. He found that Plaintiff has the mental abilities only to maintain concentration and attention for a minimum of two hour periods, to accept supervision only on a basic level, and to adapt to changes in the work place only on a basic level. (R. 13). Plaintiff does not suggest additional limitations which were opined by Dr. Mohiuddin or Dr. Frieman and which should have been accepted by the ALJ, and does not point to specific record evidence which supports such additional limitations.

To the extent Plaintiff objects that the ALJ did not provide sufficient reason for "dismissing the state agency RFC as not being consistent with the medical evidence" (Pl. Br. 15), the court reminds Plaintiff that the ALJ provided "significant weight" to the state agency RFCs of Dr. Siemsen and Dr. Stern. (R. 15, 17). However, the ALJ also stated that he gave "no weight" to the physical RFC assessment form at Exhibit 13F (R. 429-36) which he characterized as "completed by the state agency" because it "was not completed by a medical source" and "is not consistent with" the record medical evidence. The form at Exhibit 13F is dated January 6, 2009, during the initial review of Plaintiff's application,

and was signed by a state agency Single Decisionmaker (SDM). (R. 436). Within a short time after the Commissioner began using Single Decisionmakers, a long line of cases was decided holding that "[a]n SDM is not a medical professional of any stripe, and the opinion of an SDM is entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources." Jordan v. Astrue, Case No. 08-1045-MLB, slip op. at 6 (D. Kan. Apr. 8, 2009) (Report and Recommendation): see, e.g., Dewey v. Astrue, 509 F.3d 447, 449-50 (8th Cir. 2007); Stratton v. Astrue, ___ F. Supp. 2d ___, ___, 2012 WL 1852084, *16 (D.N.H. May 11, 2012); Warren v. Astrue, 830 F. Supp. 2d 1369, 1372 (S.D. Fla. 2011); Harris v. Comm'r of Soc. Sec., slip op., No. 12-10387, 2013 WL 1187925, *13 (E.D. Mich. Feb. 28, 2013) rep. and rec. adopted by dist. ct. 2013 WL 1192301 (Mar., 22, 2013); Kennedy v. Astrue, Civ. A. No. 09-00449-B, 2010 WL 1643248, *8 (S.D. Ala. Apr. 21, 2010); Lawrence v. Astrue, No. 08-cv-00483-REB 2009 WL 3158149, *1 (D. Colo. Sept. 24, 2009); Ky v. Astrue, No. 08-cv-00362-REB, 2009 WL 68760 at *3 (D. Colo. Jan. 8, 2009); Casey v. Astrue, Civ. A. No. 07-0878-C 2008 WL 2509030, *4 n.3 (S.D. Ala. June 19, 2008); Bolton v. Astrue, No. 3:07-cv-612-J-HTS, 2008 WL 2038513, *4 (M.D. Fla. May 12, 2008). The ALJ did not err in giving "no weight" to the RFC assessment of the SDM in this case.

With regard to Dr. Siemsen's opinion, Plaintiff argues that Dr. Siemsen did not explain his analysis or show how the medical evidence supported his opinion, that the ALJ simply accepted Dr. Siemsen's conclusions without further analysis, and that the ALJ failed to explain how Dr. Siemsen's opinion was supported by the evidence more

than was Dr. Laccheo's opinion. Plaintiff's argument implies that the ALJ should have taken both Dr. Laccheo's opinion and Dr. Siemsen's opinion and laid them out side-by-side and gone into minute detail to explain how Dr. Siemsen's opinion is better supported by the record than is Dr. Laccheo's. That is not the standard. The question for the court is whether the ALJ applied the correct legal standard, and whether substantial record evidence supports the ALJ's determination. As discussed above, the ALJ applied the correct legal standard to evaluate the medical opinions of record. He evaluated Dr. Laccheo's treating source opinion first, decided it was unworthy of controlling weight but worthy of "little weight," and explained his reasons for that determination. As discussed above the record evidence supports the reasons given, and Plaintiff has shown no error in the ALJ's determination.

The ALJ accorded "significant weight" to Dr. Siemsen's opinion because the restrictions Dr. Siemsen opined are "consistent with the medical evidence of record as a whole." (R. 15). The court finds that substantial record evidence supports this determination also. Dr. Siemsen completed a check-the-block physical RFC assessment form, but contrary to Plaintiff's assertion that Dr. Siemsen did not show how the record evidence supported his opinion, Dr. Siemsen in fact explained his analysis. With regard to his finding that Plaintiff had reaching limitations Dr. Siemsen stated, "Cl[aiman]t is restricted from constant rapid repetitive motion of the left extremity due to carpal tunnel. She is limited to occasional overhead reaching due to her DDD [(degenerative disc disease)] of the c-spine and fusion." (R. 487). Dr. Siemsen stated that he gave significant

weight to Dr. Moore's decision on January 23, 2009 to release Plaintiff to work without any restrictions after recovery from carpal tunnel surgery in November 2008. (R. 490).

Dr. Siemsen also explained the basis for his opinions:

> Ms. Maxfield is a 47 year old female w/ the allegations of DDD of the neck and back, Permanent nerve damage in neck, spinal stenosis and carpal tunnel in the left arm. Cl[aiman]t worked til 06/20/08 EPOD.
>
> Cl[aiman]t did a job described by cl[aiman]t a[s] medium work u[n]til 06/20/08 which she stopped due to layoffs. An elect[r]omyogr[a]phy was done that confirmed that cl[aiman]t had left sided carpal tun[n]el. [S]he had normal motor unit morphology and recruitment seen on needle exam, including high cervical paras[pi]nals on the left. There was no clear findings for cervical radiculopathy. She does have a hx of a C spine fusion. MRI done on 05/01/06 showed anterior plat and screw fusion at C3-C4 level, w/ the central canal widely patent at all the visualized levels mild degeneration is present [as] described. No significant lateral neuroforaminal narrowing at any of the visualized levels. 07/07 cl[aiman]t received steroid injection. On exam on 12/09/08 cl[aiman]t was noted to have markedly limited ROM w/ the c-spine, she recently had carpal tunnel surgery[,] on exam her upper and lower extremities were noted to be 5/5 and grip strength for the right is 20-25 lbs and left 10-15 lbs. [F]ine and gross repetitive motor movements were normal. Gait was unassisted and she was able to walk on her toes and heels. She had difficulty squatting.
>
> Exam on 05/02/2009 shows no observed abnormalities of gait. Cl[aiman]t has 40 pounds of grip strength with the right hand and 30 pounds of grip strength with the left hand. Cl[aiman]t is mild decreased ROM of the 1-spine and c-spine. [C]l[aiman]t can ben[d] 12 inches to the floor. [P]araspinous muscle spasm is noted. [N]o difficulty with ortho man[eu]vers. Gait and station are stable. Carpal tunnel syndrome: Tinel and phalen are negative bilaterally grip strength and dexterity are preserved. There is no interosseous atrophy noted. Cl[aiman]t is left hand dominant. Signature is free flowing and legible. Cl[aiman]t is on morphine for pain control.
>
> After review of the medical and non-medical cl[aiman]t does have some limitations[,] however the severity is not credible as the medical does not

> reflect such severe limitations.  After review of all the medical and non
> medical[,] cl[aiman]t is found capable of this RFC.

(R. 491) (capitalization and punctuation supplied).  Dr. Siemsen's summary is supported

by the record evidence and is also consistent with the ALJ's summary of the evidence.

Moreover, although Plaintiff claims that Dr. Siemsen did not explain his analysis, she

does not point to any error in Dr. Siemsen's (or the ALJ's) summary of the evidence.

At pages 16 through 18 of her Brief, Plaintiff points to treatment notes from Dr.

Polly, Dr. Laccheo, Dr. Veloor, and Dr. Duncan reflecting that Plaintiff had been treated

by those doctors and reported certain symptoms such as pain.  However, The ALJ did not

find that Plaintiff's impairments were without symptoms.  Rather he found that her

symptoms, although present, are not so severe as alleged by Plaintiff.  Plaintiff has shown

no error in the ALJ's evaluation of the medical opinions, and the court will not accept

Plaintiff's implied request to reweigh the evidence and substitute its judgment for that of

the ALJ.  Next, the court addresses Plaintiff's allegations of error in the credibility

determination.

## IV.    The Credibility Determination

Plaintiff claims the ALJ did not perform a proper credibility analysis.  She argues

that the ALJ misunderstood and mischaracterized her allegations, took her function

reports "completely out of context," ignored her testimony at the hearing, and inferred

without any evidence to support the inference that Plaintiff is taking care of her

grandchild who, along with Plaintiff's daughter, is living in her home.  The

Commissioner argues that the ALJ properly assessed credibility. She argues that the ALJ explained the reasons for his credibility determination and that substantial evidence supports the determination.

## A.    The ALJ's Credibility Determination

The ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible." (R. 18). He then explained the basis for his credibility determination:

> The testimony of the claimant at hearing was not credible in relation to the severity of her condition and the severely limited activities. In terms of the claimant's allegations, [(1)] the objective evidence does not support the claimant's allegations. The consultative examination (Ex. 21F [(R. 477-82)]) while noting some limited range of motion found [(2)] no problems with the orthopedic maneuvers. [(3a)] The claimant does not complain of any significant residual functioning limitations from her carpal tunnel surgery, and [(3b)] the claimant was released by the treating doctor to full duty with no restrictions (Ex. 19F [(R. 460-72)]). [(3c)] The consultative examiner found no limitations as a result of the carpal tunnel surgery. Additionally, [(4)] the consultative examiner found the claimant's alleged mental impairments situational to her pre-occupation with her alleged impairments. The undersigned, however, gives the claimant the benefit of the doubt as to some of her limitations and subscribes the above RFC.

> Throughout the record and during her testimony, [(5a)] the claimant's description of the severity of the pain has been so extreme as to appear implausible. The claimant indicates that she is able to do nothing all day except ice her neck and back. This would be somewhat [(5b)] consistent with the consultative examiner's report that her condition is somewhat pre-occupational. In relation to her pain medication, the claimant indicated she takes her Morphine three times a day. Her explanation of the effects of the Morphine portrayed an almost debilitating period of time while the Morphine was working. [(6)] However, Dr. Laccheo noted that the claimant's pain medications do not cause decreased concentration (Ex. 27F [(R. 524-26)]). Thus, the claimant's credibility is diminished by her

somewhat exaggerated and inconsistent claims of the severity of her pain and her incredible depiction of the effects of her pain medication.

The claimant testified that she lives with her teenage daughter and her daughter's newborn baby. The claimant testified that she does not care for the baby and holds the baby only five minutes while sitting down. While the claimant claims she is not able to care for the child, it should be noted that being in a home with a newborn can be quite demanding both physically and emotionally, even with the assistance of the full-time caretaker of the child. The claimant has reports [sic] daily activities including making her bed; doing dishes every day; doing laundry once a week; and making dinner daily. The claimant indicates she can care for her own personal needs including taking a shower (Ex. 14E [(R. 273-84)]). The claimant also indicates she goes out to go shopping and goes to her daughter's school concerts (14E [(R. 273-84)]). The claimant's sister indicates that the claimant is able to do light housework, laundry, and cook easy meals. The claimant is able to drive and ride in a car, can go out alone, and can do her own shopping (Ex. 13E [(R. 263-72)]). [(7)] These activities are somewhat inconsistent with the very limited activities the claimant testified to at hearing and reported in the medical records. Thus, the claimant's credibility is diminished by her subjective explanations of her activities of daily living.

[(8)] The claimant worked for years after her surgeries and only stopped due to downsizing. The record reveals that the claimant's allegedly disabling impairments was present at approximately the same level of severity prior to the alleged onset date. The fact that the impairments did not prevent the claimant from working at that time strongly suggests that it [sic] would not currently prevent work. There is no evidence of a significant deterioration in the claimant's medical condition since that layoff. A reasonable inference, therefore, is that the claimant's impairments would not prevent the performance of that job, since it was being performed adequately at the time of the layoff. Thus, the claimant's credibility is diminished by the fact that the claimant continued to successfully work well beyond the date her impairments began.

(R. 18-19) (numbering added for ease of identify credibility rationale).

## B.     Standard for Evaluating Credibility

An ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

The Tenth Circuit explained the analysis for considering subjective testimony regarding symptoms. Thompson, 987 F.2d at 1488 (dealing specifically with pain).

A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating credibility, the court has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2001). These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489). The Commissioner promulgated regulations suggesting relevant factors to be considered in evaluating credibility which overlap and expand upon the factors stated by the court: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii).

## C.     Analysis

As the ALJ found in his decision, the allegations of symptoms that Plaintiff included in her function reports are not so severe as she testified to at the hearing. Plaintiff implicitly acknowledges this fact, and accounts for it by arguing that the "ALJ mischaracterized Maxfield's worsening symptoms from 2008 to 2010." (Pl. Br. 19).

However, the ALJ found that "the claimant's allegedly disabling impairments was [sic] present at approximately the same level of severity prior to the alleged onset date," and that "[t]here is no evidence of a significant deterioration in the claimant's medical condition since [her] layoff." (R. 19). As the ALJ found, before filing her Brief before this court Plaintiff did not allege that her condition had deteriorated after the alleged onset of her disability. While it is true that, as the ALJ found and as Plaintiff admits, Plaintiff's testimony at the hearing suggested much greater limitations in her abilities than did her prior reports in her filings with the agency, Plaintiff made no argument at the hearing that her condition had deteriorated or worsened. As the ALJ noted in reason (7) for finding Plaintiff not credible, Plaintiff's report of abilities in her function report, and her sister's report of her abilities in the sister's function report are "inconsistent with the very limited activities the claimant testified to at the hearing." (R. 18). As the ALJ found, this is a reason to discount the credibility of Plaintiff's allegations and does not reflect the ALJ's taking the function reports out of context, mischaracterizing the symptoms, or ignoring evidence favorable to Plaintiff.

Plaintiff also asserts that it was error for the ALJ to "comment that simply because Maxfield lived in a home with her daughter and her daughter's baby, she impliedly must be caring for the baby," when "there is not one substantial piece of evidence that ties Maxfield to caring for this child on any kind of long or even short-term basis," and that Plaintiff specifically testified that "she does <u>nothing</u> with the baby and that if she holds

him, her daughter has to come and get him within five minutes." (Pl. Br. 20) (citing R. 18, 28) (emphasis in original).

Contrary to Plaintiff's allegation, the ALJ did not find that Plaintiff cares for her grandchild. Rather, he seems to have (at least for the purpose of argument) accepted Plaintiff's testimony that she does not care for the child and he "noted that being in a home with a newborn can be quite demanding both physically and emotionally, even with the assistance of the full-time caretaker of the child." (R. 18). Thereby, he was pointing out that the very presence of a newborn in the home is emotionally demanding, and it also increases the physical demands on the individual (such as Plaintiff) responsible for taking care of the home. Plaintiff does not assert error in this rationale. Moreover, even if there is an implication that the ALJ did not accept Plaintiff's testimony in this regard at face value, he need not accept Plaintiff's reports when making his credibility determination. He found Plaintiff's allegations not credible, and Plaintiff has not shown error in that finding. In fact, she nas not even alleged error in most of the eight reasons the ALJ stated for his finding. The court's review of a credibility finding is deferential, and the ALJ here has closely and affirmatively linked his credibility finding to substantial record evidence. Plaintiff has not shown error in that finding.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 5th day of July 2013, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**